UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NICOLE SULLIVAN,

    Plaintiff,

v.                                                                                 Case No: 6:12-cv-996-Orl-22TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## REPORT AND RECOMMENDATION[1]

The Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Act.

I have reviewed the record, including the administrative law judge's ("ALJ") decision, the exhibits, the administrative record, the transcript of the hearing, and the pleadings and memoranda submitted by the parties. For the reasons that follow, I respectfully recommend that the Commissioner's final decision in this case be **affirmed**, pursuant to sentence four of 42 U.S.C. § 405(g).

### I. Background

    A. Procedural History

---

[1] Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

Plaintiff filed for DIB and SSI benefits on August 16, 2007.  (Tr. 22).  She alleges disability beginning on August 1, 2006 due to limited comprehension, insomnia, bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), depression, and anxiety disorder.  (Tr. 143, 152).  She was 24 years old on her alleged disability onset date. (Doc. 26 at 2). She reported past work as a cook, burger flipper, and grocery store bagger.  (Tr. 181).  Her application was denied initially and on reconsideration.  (Tr. 19-22).  On April 22, 2010, at Plaintiff's request, a hearing was held before the ALJ who issued a decision on May 21, 2010, finding Plaintiff was not disabled.  (Tr. 22-29; 37-68). On March 30, 2012, the Appeals Council denied Plaintiff's timely request for review.  (Tr. 8-10).  She has exhausted her administrative remedies and this case is now ripe for consideration under 42 U.S.C. § 405(g).

B.  Relevant Medical Records

On May 21, 2006, Plaintiff reported having an asthma attack to Tina Pait-Paellitteri, R.N. (T. 279). On examination, Nurse Pait-Paellitteri found that Plaintiff appeared anxious. (T. 279).  On May 22, 2006, Plaintiff complained of anxiety to Dennis Natale, M.D. (T. 277). Dr. Natale diagnosed Plaintiff as suffering from an anxiety reaction with hyperventilation. (T. 278).

On November 15, 2006, Josette Romain, M.D. diagnosed Plaintiff with bipolar disorder. (T. 345). On May 1, 2007 Jay Chanmugam, D.O. diagnosed Plaintiff with anxiety. (T. 287).  On June 12, 2007, Plaintiff was treated at Family Psychiatric Service. She exhibited decreased energy, concentration, and motivation, and she was found to be depressed and impulsive. (Doc. 343).  She was diagnosed with bipolar disorder. (Id.).

Plaintiff returned to Family Psychiatric Service again on September 18, 2007 where she was diagnosed with bipolar disorder. (T. 342).  On November 29, 2007, she

was evaluated by consultative examiner Malcolm J. Graham, III, Ph. D. (T. 346-49). On examination, Dr. Graham found Plaintiff "could recall one out of four words after five minutes[,] but her effort on this task was felt to be quite marginal." (T. 347). Dr. Graham diagnosed Plaintiff with bipolar disorder, intermittent explosive disorder, and asthma. (T. 348).

On December 21, 2007, State Agency review physician Alan Harris, Ph. D., completed a mental RFC assessment form and psychiatric review technique form on Plaintiff. (T. 350-67). Dr. Harris diagnosed her with bipolar disorder. (T. 357). Dr. Harris opined that Plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. (T. 364).

Dr. Harris also opined that Plaintiff was moderately limited in her abilities to: maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and set realistic goals or make plans independently of others. (T. 350-51). Dr. Harris said Plaintiff would "have periodic difficulty handling criticism" and she would "need help with effective planning." (T. 352).

On May 21, 2008, Plaintiff was treated at Fish Memorial Hospital for chest pain and anxiety. (T. 395). On June 11, 2008, she complained of experiencing "intermittent anxiety attacks" once a month with her "anxiety pills not working." (Tr. 375, 378). Dr. James Hayes determined that she was anxious and suffering from a panic attack. (T. 375).

On June 23, 2008, Plaintiff returned to Family Psychiatric Service where she was diagnosed with bipolar disorder and anxiety disorder, not otherwise specified ("NOS"). (T. 555). On July 17, 2008, State agency review physician Timothy Foster, Ph.D., completed a psychiatric review technique form and diagnosed Plaintiff with intermittent explosiveness disorder. (T. 405-18). Dr. Foster opined that Plaintiff had mild difficulties in maintaining concentration, persistence, or pace. (T. 415).

On September 20, 2008, Plaintiff was treated at Fish Memorial Hospital and diagnosed with acute asthma exacerbation. (T. 523). On October 15, 2008, Dr. Amy Kelley diagnosed Plaintiff with acute anxiety. (T. 511-12).

On February 4, 2009, Plaintiff complained of feeling depressed with thoughts of suicide while being treated at Family Psychiatric Service. (T. 554). She was diagnosed with bipolar disorder and anxiety disorder, NOS. (Id.). It was noted that she was unable to concentrate or "get along well [with] others." (Id.).

On February 12, 2009, Plaintiff was diagnosed with anxiety while at Fish Memorial Hospital. (T. 494). On September 23, 2009, mental health counselor Norma Blackman, M.S., wrote a narrative report to Plaintiff's former representative. (T. 424). Ms. Blackman reported that she had seen Plaintiff four times since August 13, 2009 and Plaintiff was considered at risk for Post-Partum Depression "because she has a history of depression." (Id.). Ms. Blackman opined that "it appears that [Plaintiff's] psychological distress is currently interfering with her ability to set goals, problem-solve, and take steps toward personal growth." (Id.).

On November 13, 2009, Plaintiff was treated by Trevor Deraney, PAC who diagnosed her with anxiety. (Tr. 472). On December 12, 2009, she complained of

- 4 -

headaches occurring three to four times a week.  (T. 460). Dr. Stanley Stockhammer diagnosed Plaintiff with anxiety and headaches. (Id.).

On January 14, 2010, Adly Thebaud, M.D., of Family Psychiatry Service completed a mental RFC assessment form on Plaintiff. (T. 456-58.).  Dr. Thebaud diagnosed her with bipolar disorder and anxiety disorder. (T. 456).  Dr. Thebaud opined that Plaintiff had extreme limitations in her abilities to: complete a normal workday and workweek without interruptions from psychologically based symptoms; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (T. 457). Dr. Thebaud said Plaintiff had marked limitations in her abilities to: remember locations and work-like procedures; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; perform at a consistent place with a standard number of length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. (T. 456-58).

Dr. Thebaud opined that Plaintiff was moderately limited in her abilities to: understand and remember very short and simple instructions; carry out very short and simple instructions; make simple work-related decisions; ask simple questions or request assistance; and travel in unfamiliar places or use public transportation. (T. 456-58). Dr. Thebaud concluded that Plaintiff would be absent from more than 4 days of work per

month. (T 457). Dr. Thebaud noted that Plaintiff's anxiety, depression, easy distraction, lack of concentration, and difficulty staying focused supported his medical opinion. (T. 458).

On January 14, 2010, Plaintiff reported feeling increased social anxiety, stress, depression, and anxiety while being treated at Family Psychiatric Service. (T. 475). She was diagnosed with bipolar disorder and anxiety disorder, NOS. (Id.).

On January 27, 2010, Plaintiff was treated at Deland Hospital for chronic back pain. (T. 481). On February 5, 2010, while at Deland Hospital, she was diagnosed with acute exacerbation of chronic back pain. (T. 482).

## II. The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Commissioner and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since her August 1, 2006 alleged onset date. (Tr. 24). At step two, the ALJ found Plaintiff suffered from the following severe impairments: affective mood disorder and asthma. (Id.). At step three, the ALJ decided that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 24-25). The ALJ also determined Plaintiff's residual functional capacity ("RFC"). (Tr. 25-29). At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 29). Finally, at step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 29-30). Accordingly, the ALJ held that Plaintiff had not been under a disability within the meaning of the Act from her August 1, 2006 alleged onset date through May 21, 2010, the date of the ALJ decision. (Tr. 30).

### III. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our

judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote, 67 F.3d 1533, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

### IV. Discussion

#### A. Duty to Develop the Record: Consultative Intelligence Examination

Plaintiff argues that the ALJ failed to obtain a consultative intelligence examination and thus, failed to properly develop the record in this case. (Doc. 26 at 9). Plaintiff contends that the ALJ should have obtained a consultative intelligence examination because she applied for disability benefits in part due to "limited comprehension" and the highest grade she completed was the eighth grade. (Id. at 10). Plaintiff adds that the record demonstrates her limited cognitive ability and deficits in adaptive functioning. (Id.). The Commissioner maintains that the "ALJ was not required to develop evidence to prove Plaintiff's case or otherwise act as her counsel." (Doc. 27 at 4). The Commissioner argues that Plaintiff bears the burden of proving that she is disabled. (Id.).

In the Eleventh Circuit the ALJ has a basic duty to develop a full record. Graham v. Apfel, 129 F.3d 1420, 1422-23 (11th Cir. 1997); Todd v. Heckler, 736 F.2d 641, 642 (11th Cir. 1984). However, that duty does not absolve Plaintiff from proving her case. See Hamby v. Comm'r of Soc. Sec. Admin., No. 11-11455, 2012 WL 2547174, at *2 (11th Cir. July 3, 2012); see also Fletcher v. Astrue, No. 3:11-cv-665-J-JRK, 2012 WL 4356258, at *4 (M.D. Fla. Sept. 24, 2012).

The Eleventh Circuit has held that the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law

judge to make an informed decision." Id. (quoting Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007)).  Put another way, only after a claimant has "satisfied her burden to ensure that the record contains sufficient evidence to suggest a reasonable possibility that her impairment was severe," is the ALJ's duty to order a consultative examination triggered.  Rutherford v. Apfel, No. 98-5190, 1999 WL 651392, at *3 (10th Cir. Aug. 26, 1999).  Plaintiff must demonstrate that the inability to consider the missing evidence resulted in "unfairness or clear prejudice." Jenkins v. Colvin, No. CA 2:12-00465-N, 2013 WL 3465190, at *4 (S.D. Ala. July 10, 2013); Fletcher, 2012 WL 4356258, at *4.

There is no credible evidence to support Plaintiff's claim that she is so severely impaired by limited concentration that it affects her functioning and ability to perform basic work activities.  The ALJ's conclusion that Plaintiff was able to carry out daily functions without significant limitation, despite her limited education, is supported by substantial evidence.  In reaching his decision, the ALJ relied in part on the opinion of consultative examiner, Dr. Graham, who found no evidence of "tangential or circumstantial thinking" or problems with memory or concentration.  (Tr. 26) (citing Tr. 348).  Dr. Graham did not find any intellectual disabilities.  (Id.).  The record shows that Plaintiff told Dr. Graham she quit school in the 8th grade because of "fighting and getting into trouble with a teacher" and that she was never in any kind of special education classes.  (Tr. 346).  State agency psychological consultants also opined that Plaintiff was not mentally retarded and that she had the mental capacity to perform basic mental work activities.  (Tr. 352, 358, 405). In addition, Plaintiff denied any significant deficits in adaptive functioning and advised the case worker that:

- 9 -

> She lives with her mother and her 6mos old son for which she
> takes care of all his needs, she also helps her mom with
> taking care of the animals, she is able to help with house
> chores but needs reminders, she is able to use the microwave
> and make sandwiches, she does the laundry and dishes, able
> to drive go to the store for groceries, pay bills, make correct
> change and manage her finances, able to watch TV and
> recall, able to get along well with others and family but prefers
> to be alone.

(Tr. 369). Plaintiff's medical records largely consist of emergency room reports, none of which note limited comprehension. E.g., (Tr. 383). She saw Licensed Mental Health Counselor Norma Blackman and Dr. Stockhammer on different occasions and they did not report any limited comprehension. (Tr. 424, 464).

Plaintiff has not (a) demonstrated that she is so severely impaired by limited concentration that it affects her functioning and ability to perform basic work activities, (b) sought the opportunity to supplement her medical record, or (c) identified "any missing records or evidentiary gaps which might preclude the ALJ's decision." Penrod v. Astrue, Case No. 8:10-cv-2615-T-TBM, 2012 WL 571410, at *6 (M.D. Fla. Feb. 22, 2012). Therefore, I respectfully recommend that the district court reject Plaintiff's argument and affirm the Commissioner's decision in this regard.[2]

---

[2] As an aside, Plaintiff argues that had the ALJ ordered a consultative intelligence examination, an IQ test *might have been* consistent with the requirements of Listing 12.05(C). (Tr. 26 at 11). To meet or equal Listing 12.05(C), Plaintiff must demonstrate (1) some mental retardation that manifested before the age of 22, (2) an IQ of 60 through 70 (either on a verbal, performance, or full scale), and (3) a physical or other mental impairment that imposes "an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(C); see also Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). Dr. Graham mentions that Plaintiff saw a psychiatrist for the first time in kindergarten and was diagnosed with ADHD. (Tr. 347). He also noted that Plaintiff was never in any kind of special education classes despite dropping out of school in the 8th grade. (Tr. 346). Plaintiff neither argues that this notation is evidence that she had some mental retardation that manifested before the age of 22 or that it is some indication that the speculative IQ test would have yielded a verbal, performance, or full scale score of 60 through 70. Plaintiff does not offer the evidence she wants the Court to

## B. The ALJ's Residual Functional Capacity Assessment

### 1. Treating Physician's Opinion

Plaintiff argues that the ALJ failed to properly credit the testimony of her treating physician, Dr. Thebaud. (Doc. 26). Weighing the opinions and findings of treating physicians is an integral part of steps four and five of the sequential evaluation process. The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence. In Winschel, the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. 631 F.3d at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)); see also Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).

Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory[3] or inconsistent with the doctor's own medical records." Phillips, 357 F.3d

---

consider for each prong of the Listing 12.05(C) analysis and it is not the Court's responsibility to argue her case for her or make loose associations in her favor based on speculation.

[3] Where a treating physician has simply made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

- 11 -

at 1240-41 (citations omitted); see also Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir.1991).

When a treating physician's opinion does not warrant controlling weight, the ALJ must still consider the following factors in deciding how much weight to give the opinion: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion." Logreco v. Astrue, No. 5:07-cv-80-Oc-10GRJ, 2008 WL 783593, at *10 (M.D. Fla. Mar. 20, 2008). "[T]he Commissioner 'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight." Hill v. Barnhart, 440 F. Supp 2d 1269, 1273 (N.D. Ala. 2006) (citation omitted).

The ALJ's finding that Dr. Thebaud's medical opinion is inconsistent with his treatment record and unsupported by the record as a whole is based on substantial evidence. Dr. Thebaud's mental capacity assessment is the only medical source opinion that categorizes Plaintiff's condition as extreme. He opined that she was extremely limited in the following areas: the ability to complete a normal workday without interruptions from psychologically based symptoms; the ability to complete a normal workweek without interruptions from psychologically based symptoms; and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 457).

Dr. Thebaud noted that Plaintiff was markedly limited in the following areas: the ability to remember locations and work-like procedures; the ability to understand and

remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or in proximity to others without being distracted by them; the ability to perform at a consistent pace with a standard number and length of rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; ability to respond appropriately to changes in the work setting; and the ability to set realistic goals or make plans independently of others. (Tr. 456-458).

Despite painting this grim picture of Plaintiff's condition, Dr. Thebaud (on at least two occasions) opined that Plaintiff had good remote and short-term memory, as well as appropriate insight and judgment. (Tr. 342, 555); see also (Tr. 475, 554). Also, as the ALJ discussed in his written opinion, Dr. Thebaud routinely assigned Plaintiff global assessment of functioning (GAF)[4] scores ranging between 54 and 62, which represents mild to moderate difficulties in functioning. (Tr. 27); see (Tr. 342-45, 475, 554-55).

In her brief, Plaintiff argues that the ALJ erred in ascribing "little weight" to Dr. Thebaud's opinions because they were consistent with the other medical diagnoses in the record. (Doc. 26). Plaintiff's argument is fatally flawed. Simply listing diagnoses does not give the Court any insight into the severity of Plaintiff's limitations or her ability to

---

[4] The GAF scale is a numeric scale that mental health professionals use to rate the occupational, psychological, and social functioning of adults. See DSM-IV at 32-34. A GAF score of 51 to 60 indicates moderate symptoms or difficulties in social, occupational, or school functioning. Id. Scores in the range of 61 to 70 reflect some mild symptoms or mild difficulties in functioning. Id.

- 13 -

perform substantial gainful activity. The ALJ is not concerned with a claimant's diagnosis; the relevant inquiry is the *degree* to which a claimant's condition limits her ability to engage in substantial gainful activity. See Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of . . . impairments does not reveal the extent to which they limit [Plaintiff's] ability to work or undermine the ALJ's determination in that regard."); 20 C.F.R. § 404.1545(a) (The "residual functional capacity is the most you can still do despite your limitations."); Ward v. Astrue, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) ("[A] 'mere diagnosis . . . says nothing about the severity of the condition . . . [D]isability determinations turn on the functional consequences, not the causes, of a claimant's condition'") (internal citations omitted).

The ALJ's conclusion that Dr. Thebaud's medical opinion is inconsistent with his treatment record and unsupported by the record as a whole is based on substantial evidence. Accordingly, I respectfully recommend that the district court reject Plaintiff's argument and affirm the Commissioner's decision in this regard.

### 2. State Agency Consultant's Opinion

Plaintiff argues that the ALJ failed to "reconcile the RFC determination with the opinion of State agency review physician Dr. Harris." (Doc. 26). The ALJ afforded "some weight" to the opinions of non-examining state agency consultants – a group which included Dr. Harris. (T. 28-29). The ALJ was under no obligation to give Dr. Harris' opinion (or the opinion of any other state agency consultant) a certain amount of weight. See Meade v. Astrue, No. 8:09-cv-2027-T-27AEP, 2010 WL 5575303, at *4 (M.D. Fla. Dec. 17, 2010) ("[A] consultant physician's opinion 'deserves no special weight.'") (internal citations omitted). The only thing the ALJ was required to do was specify the amount of weight afforded to the opinions, which he did. See McCloud v. Barnhart, 166

F. App'x 410, 418-19 (11th Cir. 2006) (The court found that while the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion," the ALJ is, however, "required to state with particularity the weight he gives to different medical opinions and the reasons why."); Davis v. Barnhart, 186 F. App'x 965, 967 (11th Cir. 2006) ("The ALJ must state with particularity the weight given different medical opinions and the reasons for doing so, and the failure to do so is reversible error."). The ALJ accounted for the limitations discussed in the consultative examination reports by finding that Plaintiff had no past relevant work to which she could return and that she should be limited to unskilled work. (Tr. 29). Plaintiff's RFC does not conflict with Dr. Harris' opinions and Plaintiff's reliance on Meade for this proposition is unpersuasive. Accordingly, I respectfully recommend that the district court reject Plaintiff's argument and affirm the Commissioner's decision in this regard.

    C.    Plaintiff's Credibility

Plaintiff argues that the ALJ erred in finding that her subjective complaints were not credible. (Doc. 26 at 17). Plaintiff's subjective complaints, by themselves, are insufficient to establish a disability. See 20 C.F.R. §§ 404.1529(a), 416.929(a). The Eleventh Circuit has adopted a two-pronged standard for examining subjective complaints of pain. First, the claimant must provide evidence of an underlying condition. Next the claimant must submit either objective medical evidence confirming the severity of the alleged pain or show that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the claim. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). If the ALJ discredits the claimant's subjective testimony, he must articulate explicit and adequate reasons for doing so. Id.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms; but, after a thorough review of the evidence, the ALJ held that Plaintiff's claims concerning the severity of her symptoms were inconsistent with the medical evidence in the record. (Tr. 28). On one hand, Plaintiff testified that because of her impairment, she needed assistance caring for her children and doing laundry. (Tr. 56-57). On the other hand, she informed the social security case worker that she had the ability to take care of all of her child's needs and even *helps her mom* take care of the animals. (Tr. 369). She also told the social worker she could manage her own finances (Id.), which is a statement Dr. Thebaud echoed. (Tr. 458). Accordingly, I find that the ALJ has articulated explicit and adequate reasons for discounting Plaintiff's testimony concerning the severity of her impairments.

Plaintiff takes issue with the ALJ's acknowledgement that "the record reflects significant gaps in [Plaintiff's] history of treatment" and that there have been periods of time when Plaintiff did not take any medications for her symptoms. (Doc. 26 at 18-19). The ALJ did not "criticize" Plaintiff for her inability to afford prescribed medication, as Plaintiff argues. The ALJ simply observed that the record evidence established that Plaintiff's symptoms improved when she took her medications as prescribed. (Tr. 28). Plaintiff's medication compliance is part of her medical history, which the ALJ was permitted to consider along with the rest of the record evidence in developing Plaintiff's RFC. See 20 C.F.R. §§404.1529(c)(3)(iv), 416.929(c)(3)(iv); SSR 96-7P, 1996 WL 374186 (1996). I am not persuaded by Plaintiff's argument and recommend that the district court reject it.

    D.    <u>Incomplete Vocational Expert Hypothetical</u>

Lastly, Plaintiff argues that "the ALJ's errors in developing the record, determining Plaintiff's RFC, and determining Plaintiff's credibility" necessarily means that the hypothetical presented to the Vocational Expert was incomplete. (Doc. 26 at 20-22). Specifically, Plaintiff maintains that the VE hypothetical was incomplete because it did not include the limitations assessed by Dr. Thebaud and Dr. Harris' specific opinion that Plaintiff would need assistance with effective planning. (Id. at 21). As discussed in sections IV.B.1 and 2 of this report and recommendations, the ALJ's decision to attribute little weight to Dr. Thebaud's opinion and some weight to Dr. Harris' opinion was based on substantial evidence. Therefore, I respectfully recommend that Plaintiff's argument based upon his previously dispelled contentions be rejected and that the district court affirm the Commissioner's decision.

## V. Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

1. The Commissioner's final decision in this case be **AFFIRMED**

2. The Clerk be directed to enter judgment accordingly and **CLOSE** the file.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on August 14, 2013.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record